## FOGG *vs.* SAWYER.

If a party consent to take bank bills, in payment of a sum due to him, without stipulating to take the risk of them, he is entitled to receive bills which are at the time convertible into money at the place where they purport to be redeemable ; and if he receive the bills of a bank which has failed, and the failure of which is unknown to either party, he may return them in a reasonable time, and recover the amount in an action upon the original contract.

ASSUMPSIT, to recover a balance alleged to be due the plaintiff, upon the sale of a yoke of oxen.

It appeared in evidence that about the middle of April, 1837, the defendant purchased of the plaintiff a pair of oxen, and passed to him in payment forty dollars in bills of the Chelsea bank. At the time of the purchase the bank had failed, but this was unknown to the plaintiff, and it did not distinctly appear that it was known to the defendant. As soon as the plaintiff learned that the bank had failed, he called upon the defendant to pay him other money, and tendered him the bills received ; but the defendant declined receiving them, and refused to pay.

Chelsea bills were then worth about fifty per cent. in the market, and at the time of the trial were worth thirty-five or forty per cent.

The plaintiff brought the bills into court, that the defendant might receive them.

The defendant's counsel contended that he was not liable, unless he knew, at the time he passed the bills to the plaintiff, that the bank had failed ; but the court being of a different opinion, a verdict was taken for the plaintiff, by consent, to be amended, or set aside, according to the opinion of this court upon the foregoing case.

*J. Porter*, for the defendant. There is to be a loss on the bills. The equity is equal between the parties.

Where each has equal means of information, &c., a court of equity will not interfere.

In 3 *Burr.* 1354, *Price* vs. *Neal*, which was an action to recover back money paid by the acceptor to the payee, on a forged bill, Lord Mansfield said there was no reason to throw off the loss upon another innocent person.

Bank bills are to be regarded as promissory notes, and not as money. The books take a distinction between a promissory note received in payment of a precedent debt, and the delivery of such note in payment for goods at the time of delivery. *Bull. N. P.* 277; 12 *Mod.* 24; 1 *Ld. Raym.* 442; 1 *Esp. R.* 447; 11 *Johns.* 409; 5 *Mass.* 299; 6 *Mass.* 321; 2 *Phil. Ev.* 366, *Note B.*

The true question is, on whose credit were the bills received; on the defendant's credit or the credit of the bank?

*James Bell*, for the plaintiff. Payments in money, or in what passes as money, are not valid unless it is good at the time. 2 *Stark. Ev.* 596, *note;* 2 *Johns.* 455; 10 *Wheat.* 333; 5 *Taunt.* 488; 6 *Mass.* 182; 5 *N. H. R.* 410; 1 *ditto* 281; 4 *ditto* 492. In *Gloucester Bank* vs. *Salem Bank*, 17 *Mass.* 33, the Gloucester Bank had been guilty of laches.

PARKER, C. J. It is contended, in this case, that the equity is equal between the parties—that there must be a loss upon the bills which were received by the plaintiff, and that, both parties being equally innocent, the law should not interfere. It is not quite clear that both parties were equally innocent in this transaction. The case finds that it did not distinctly appear that the failure of the bank was known to the defendant, but it did appear that it was unknown to the plaintiff. A suspicion, however, that the defendant had knowledge of the failure, at the time he made the purchase, can have no effect upon the present decision, as no question of that kind has been submitted to the jury.

There are cases where the parties being equally innocent, or equally guilty, neither can support an action against the other; but the principle upon which they are founded is not applicable to this case. On the supposition that neither knew of the failure of the bank, at the time of the sale, the plaintiff contracted to sell the oxen, and the defendant to pay therefor a certain price. There is nothing in the case to show any agreement, in fixing upon the price, that payment was to be received in bills of the Chelsea Bank. The parties, then, must have contemplated a payment in money, or in something which was equivalent to money, and usually received as such. In fact the plaintiff might have declined receiving any thing but coin, and the defendant could not have performed his contract except by the payment of coin, if it had been required. The right to require coin was waived, but still there is nothing to show that an equivalent was not to be received.

When, therefore, the plaintiff received the bills, he received them, and the defendant paid them, as money. It was in that way only that the defendant could perform what he had undertaken to do, which was, to pay a sum of money. The bills represented money—were doing the office of money—and should have been of the value of money at the place where they purported to be redeemable, and convertible into money. The plaintiff was as much entitled to receive good bills, if he consented to take bills, as he would have been to have received good coin, in case the payment had been made with specie; and it is not doubted that in such case, if the payment had been made in counterfeit coin, the plaintiff would have been entitled to recover. The same is true of counterfeit bills, when they have been passed in payment. 6 *Mass. Rep.* 182, *Young* vs. *Adams;* 2 *Johns. Rep.* 455, *Markle* vs. *Hatfield;* 4 *N. H. Rep.* 492, *Grafton Bank* vs. *Hunt.*

The case of a payment in bills of a broken bank cannot be distinguished, in principle, from that of a payment in

counterfeit money. From the time of the failure of the bank they cease to be the proper representatives of money, whether they are, at the time, near to, or at a distance from, the bank. They may have a greater value than counterfeit bills, but in neither case has the party received what in the contemplation of both parties he was entitled to receive, if the contract was to pay a certain sum. In neither case has he received money, or its representative. The sum contracted to be paid has not been paid in money, or any thing which by usage passes as money, or which was entitled at the time to represent it ; and the party has, therefore, failed to pay what he contracted to pay. 5 *N. H. Rep.* 410, *Wentworth* vs. *Wentworth.* Counterfeit coin may contain a portion of good metal, and thus have some value, but this would not make it a good medium of payment. Entire worthlessness, or not, is not, therefore, the criterion.

It can make no difference whether the party making the payment knew, at the time, that the bank had failed. That is of as little consequence as it is whether he knew that the pieces of coin or bills which he paid were counterfeit. Having undertaken to pay a sum of money, the question is, whether he has performed his obligation.

It is not sufficient that the bills, in this case, might have been current at the place of payment, when the payment was attempted to be made. They should have been current, or convertible into specie, at the place where they purported to be redeemable. When the defendant paid them as money, he took this risk upon himself. If they were not so, they were not what they purported to be, and what they were taken for.

There is no equity in the case which should lead to a different result. When the bank failed the loss fell upon the defendant, as the holder of the bills, if he held them at that time. If he had not received information of his loss, that is of no consequence. The bills were no longer redeemed on demand, and a loss, greater or less, had accrued. There

is no equity in transferring this loss to the plaintiff, because he afterwards received the bills supposing them to be equivalent to money. If he had agreed to take the risk, that would have presented the case in a different aspect. Or if he had agreed to exchange the oxen for the bills, that might have altered the case. But the bare reception of the bills in payment cannot be considered as evidence of an agreement to take the risk, because the defendant offered them as money, and the plaintiff received them as such, without knowledge of the failure.

If the bills had been convertible into money, at the bank, when the plaintiff received them, they would have been what they purported to be, and the risk of a subsequent failure, while they were in his possession, would have been with the plaintiff.

The plaintiff having offered to return the bills in a reasonable time, is entitled to treat the case as if they had not been received, and to recover the balance due on the sale of the oxen.                     *Judgment for the plaintiff.*